# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**PHILIP NIX,**                                    **CASE NO.: 3:16-CV-00320-MCR-EMT**

    **Plaintiff,**

**vs.**

**DAVID MORGAN, in his official
capacity as SHERIFF, ESCAMBIA
COUNTY, FLORIDA, JOAN
SAVAGE, ERIC HAINES, DARRELL
ALDAY, and FRANK FORTE,**

    **Defendants.**

_____/

## AMENDED COMPLAINT

Plaintiff, PHILIP NIX, hereby sues Defendants, DAVID MORGAN, in his

official capacity as SHERIFF, ESCAMBIA COUNTY, FLORIDA, JOAN

SAVAGE, ERIC HAINES, DARRELL ALDAY, and FRANK FORTE, and

alleges:

## JURISDICTION

1.    This is an action brought under 42 U.S.C. §1983, §112.3187, *et*

*seq*., Fla.Stats., and the common law of Florida. This action was originally brought

in the Circuit Court of the First Judicial Circuit in and for Escambia County,

Florida, and then removed to this court by.

2. This is an action for damages, injunctive relief, costs, and attorney's fees.

**PARTIES**

3. At all times pertinent hereto, Plaintiff, PHILIP NIX, has been a resident of Florida. He has been employed by Defendant MORGAN at all times pertinent hereto, and is *sui juris*.

4. At all times pertinent hereto, Defendant, DAVID MORGAN, in his official capacity as SHERIFF, ESCAMBIA COUNTY, FLORIDA ("the SHERIFF"), has been organized and existing under the laws of Florida, and has been an "employer" as that term is used under the applicable laws set forth above.

5. At all times pertinent hereto, Defendant, JOAN SAVAGE, was employed by Defendant SHERIFF as a deputy, and performed tortious and/or wrongful acts within the jurisdiction of this court. Defendant SAVAGE is sued individually, and she is *sui juris*.

6. At all times pertinent hereto, Defendant, ERIC HAINES, was employed by Defendant SHERIFF as its chief deputy, and performed tortious and/or wrongful acts within the jurisdiction of this court. Defendant HAINES is sued individually, and he is *sui juris*.

7. At all times pertinent hereto, Defendant, DARRELL ALDAY, was employed by Defendant SHERIFF as a lieutenant, and performed tortious and/or

wrongful acts within the jurisdiction of this court. He is sued individually, and he is *sui juris*.

8.      At all times pertinent hereto, Defendant, FRANK FORTE (collectively with Defendants SAVAGE, HAINES, and ALDAY, "the Individual Defendants"), was employed by Defendant SHERIFF as a lieutenant, and performed tortious and/or wrongful acts within the jurisdiction of this court. He is sued individually, and he is *sui juris*.

## CONDITIONS PRECEDENT

9.      Plaintiff has satisfied all conditions precedent to filing this action, if any.

## GENERAL FACTS

10.      Plaintiff has been employed by Defendant SHERIFF from 1994 through the present, and is currently a sergeant. For a number of years he has also been a member representative for the union covering Defendant SHERIFF's employees.

11.      In 2015, Plaintiff's mother, Brenda Nix, removed a trailer from her property that had been abandoned by former tenants, Daryl and Sheila Brundidge. The trailer had been placed there as part of a rental agreement. A lease was prepared in 2013 and all parties involved signed the lease. The Brundidges failed to honor the lease and did not pay the rent agreed in the lease.

3

12. The Brundidges left the trailer on the property for several months before responding to messages concerning the abandoned vehicle, acknowledging that money was owed for past due rent. They agreed to have the trailer removed but it was never removed and they made no effort to pay the money owed.

13. Several months passed and there was no response from the Brundidges. This pattern of conduct continued until the summer of 2015.

14. In the Summer of 2015, Ms. Nix was contacted by a person wanting to lease the property. She attempted to notify the Brundidges to inform them of the urgent need to have the vehicle removed. Again, there was no immediate response.

15. Eventually, Ms. Nix was able to speak to the Brundidges and informed them that she would be leasing the property to another tenant, and the Brundidges agreed to move the trailer so the property could be leased. The agreement was again not honored, so Ms. Nix hired a towing company to remove the vehicle. The trailer was then stored at Smith Brothers Paint and Body Shop, 4001 N.W. St., Pensacola, FL 32505, through approximately September 2016.

16. Coincidentally, the Brundidges were at the location when the trailer was being removed. At that time, they acknowledged that they owed money for the vehicle remaining on the property for the extended period of time. They stated that the money would be paid so the vehicle could be returned to them. Again, and not

4

surprisingly, the money was not paid as agreed, and several months passed with no contact with anyone concerning the vehicle.

17. On or about January 17, 2016, Ms. Nix received a telephone call from a female identifying herself as Joan SAVAGE. In that call, Defendant SAVAGE stated that she was the owner of the vehicle that previously was used by the Brundidges and then removed from the rental property in 2015. She further stated that the vehicle was her property and that failure to return the property would result in Ms. Nix being arrested.

18. In the telephone call discussed in the preceding paragraph, Ms. Nix asked Defendant SAVAGE if she worked for Defendant SHERIFF, and SAVAGE confirmed that she did. Defendant SAVAGE had been seen in uniform at the rental location on several occasions.

19. Following up the telephone conversation between Ms. Nix and Defendant SAVAGE, Plaintiff called Defendant SAVAGE, identifying himself as Ms. Nix' son but not initially as a fellow employee of Defendant SHERIFF, and SAVAGE repeated to Plaintiff that his mother would be arrested if she did not return the vehicle by January 18, 2016. Plaintiff asked Defendant SAVAGE if she could provide proof that she owned the vehicle. SAVAGE told Plaintiff that she did not have an obligation to prove that she owned the vehicle. Plaintiff disagreed with her.

20.     In that telephone call, Defendant SAVAGE told Plaintiff that she was a deputy with Defendant SHERIFF, that she had already spoken to "a friend who works property crimes" for Defendant SHERIFF, that the decision to arrest Ms. Nix had already been made, and that she would be arrested imminently. Defendant SAVAGE said further that she was a trained officer and that her description of the event was enough to convince the investigator and that an arrest was proper. At this point in the conversation, Defendant Savage was not aware that Plaintiff was a sergeant with Defendant SHERIFF.

21.     Still in the same telephone call, when Plaintiff informed Defendant SAVAGE of his position with Defendant SHERIFF, she began to make excuses for why she threatened to arrest Ms. Nix.

22.     On January 19, 2016, Plaintiff visited the internal affairs ("IA") division of Defendant SHERIFF. Plaintiff asked for a citizen complaint form to complete regarding the actions of Defendant SAVAGE. He completed the written form just as would any citizen of Escambia County in a case of officer misconduct, and reported misconduct by Defendant SAVAGE in her position as a deputy with Defendant SHERIFF.

23.     Investigator Paul Hawke took the complaint against Savage and placed Plaintiff under oath. Plaintiff signed the complaint under oath, and confirmed that it was truthful.  A week after the complaint that Plaintiff filed

6

against Savage, he filed a written complaint to Colonel Steve Hardy against Defendant FORTE for falsely writing tickets on citizens at Pensacola Beach, discussed in greater detail below.

24.    On February 24, 2016, Defendant HAINES contacted Plaintiff asking for information concerning the vehicle that had been removed from Ms. Nix' property. Defendant HAINES confirmed that IA was working the complaint that Plaintiff filed against Defendant SAVAGE.

25.    In that phone call, Plaintiff was informed for the first time that Defendant SAVAGE had also filed a complaint against him, and that such complaint was also being investigated. Plaintiff was told that there was a "criminal facet" to the complaint against him.

26.    Interestingly and without any basis in fact or law, in or around February 2016, the Brundidges also filed a criminal complaint against Plaintiff for theft of the vehicle. Upon information and belief, one or more Defendants retaliated against Plaintiff for his having filed the misconduct complaint against Defendant SAVAGE by encouraging the Brundidges to file this complaint.

27.    On or about March 7, 2016, in a conversation with Plaintiff, Daryl Brundidge informed that in the context of the IA investigation of Defendant SAVAGE's complaint against Plaintiff, he had been contacted by Commander Tharp and asked to call Plaintiff to inform him that if he did not return the trailer to

7

the Brundidges, he would be arrested for theft. Based on the communications he received from Defendant HAINES and from Tharp through Daryl Brundidge, Plaintiff chose not to go forward with a public sale of the subject vehicle that he understood to be legal and had been contemplating.

28.     On or about May 5, 2016, Plaintiff was placed on administrative leave for the stated reason that he was under a "felony criminal investigation."  Threats of criminal charges had been made by that time that were so significant that Plaintiff retained counsel in case criminal charges were filed.  Plaintiff was then returned to work on or about June 23, 2016.

29.     Despite the fact that Plaintiff had few disciplinary actions against him prior to January 2016, after filing the charges against Savage and Forte, and then filing this lawsuit on May 17, 2016, multiple investigations have been initiated against Plaintiff with multiple disciplinary actions following.  One such investigation was actually initiated by FORTE on or around June 10, 2016, through which Plaintiff was accused of conduct unbecoming and improper court appearances.  This complaint was direct retaliation by FORTE to the complaint that Plaintiff filed against FORTE for falsely writing citizen's parking tickets. That complaint is still pending, as discussed below.

30.     After he was returned to work on June 23, 2016, he was placed on administrative leave again on July 1, 2016 when he was forced to obtain a doctor's

8

excuse for a self-reported injury, off the job injury in April, 2016. At the time that Plaintiff was originally injured, no medical documentation of his injury was requested. Additionally, other employees have not been required to obtain doctors excuses under these circumstances.

31. On July 7, 2016, Plaintiff was returned to work after his physician wrote an excuse for light duty. After Plaintiff submitted this medical excuse, he was micromanaged and watched daily.

32. On that same day, after returning to work from his medical appointment, upon reporting to Defendant ALDAY that he had been at such a medical appointment, ALDAY informed that he was to report to the front desk, and further informed that because he was on "light duty" he was not permitted to carry a firearm. Plaintiff proceeded to clean out his desk and to report to the front desk as instructed. He was also told by Defendant Alday that he was "worthless."

33. After being assigned to the front desk, Plaintiff noted that other officers assigned to that "light duty" post carried firearms, in fact was informed by Col. Custer that "it would be foolish not to carry a firearm," and thus proceeded to carry a weapon himself while on duty at that post. On or about July 11, 2016, Plaintiff informed Defendant HAINES in writing of the retaliation that he was subjected to as outlined in above.

34.     On or about July 13, 2016 Plaintiff was notified that he would be investigated internally for insubordination for carrying a weapon while assigned to the front desk. Such investigation was then conducted, and Defendant ALDAY issued a finding sustaining the charge and informing Plaintiff that he would be suspended.  Plaintiff was thereafter suspended without pay for three days which suspension did not occur until August 2016, as discussed below.

35.     By July 21, 2016, while the investigation Savage filed against Plaintiff was still ongoing, which is still ongoing as of the filing of this document even through the complaint that Plaintiff filed against Savage was never investigated, Lieutenant Cappas, who is employed with Defendant Sheriff, visited Smith Brothers Paint and Body Shop, where the trailer discussed above is stored, and informed the owner, Terry Smith, that any subsequent refusal to release the trailer to the Brundidges could result in his arrest.  Shortly before that date, the Brundidges had attempted to obtain the trailer from Smith.  The Brundidges continue to owe the Plaintiff's mother over $12,000.00.

36.     When Plaintiff learned of this threat to Smith and contacted Cappas, he informed Plaintiff that "I was just following orders."

37.     That same day, July 21, 2016, Plaintiff proceeded to contact Defendant HAINES to discuss the matter of the trailer, who informed that based on an email from Tom Williams, an Assistant State Attorney, the trailer was to be

10

returned to the Brundidges at no cost to them. Defendant HAINES also informed Plaintiff that as a result of new evidence uncovered against him, the State Attorney's criminal investigation into Plaintiff's alleged theft of the subject trailer had been reopened.  It is uncertain as to whether this investigation is ongoing or not.

38.   Consistent with the information conveyed to Plaintiff by Defendant HAINES the day before, on or about July 22, 2016, First Lieutenant Carl Jones informed Commander Tracy Yuhasz that the State Attorney's office had completed its investigation of the Brundidges' criminal complaint against Plaintiff pertinent to the removal the vehicle from Ms. Nix' property, informing that the State Attorney would not pursue the matter criminally. However, the memorandum continued that based on reports to investigators on the previous day, Jones was requesting to conduct a second criminal investigation of Plaintiff, this one "for grand theft, dealing in stolen property and extortion concerning Sergeant Philip Nix," and apparently involving Plaintiff's alleged actions to illegally hold the Brundidges' property as security for back rent. On information and belief, such second criminal investigation of Plaintiff remains ongoing.

39.   On or about August 3, 2016, Plaintiff prepared and caused to be delivered a written memorandum to Sheriff Morgan constituting a rebuttal to the finding sustaining the insubordination charge against him for having a weapon

while on light duty. Shortly thereafter, Plaintiff received a copy of a memorandum to Sheriff Morgan prepared by Defendant HAINES, in which HAINES indicated that Plaintiff had not been effective with his defense of the insubordination charge.

40.    In a Notice of Disciplinary Action dated August 15, 2016 and signed by Defendant HAINES the following day, Plaintiff was falsely suspended for three days for insubordination, such suspension to be enforced August 22-24 2016.

41.    On or about August 18, 2016, Plaintiff submitted a policy proposal as permitted by Defendant SHERIFF, setting forth bases therein for his proposal that "sworn member[s] shall be allowed to carry agency approved firearms unless [restricted by a physician or such carrying would aggravate an injury]." As a result of such proposal, the employees assigned to light duty were transferred from the front desk to various other assigned locations, and a rumor was spread that Plaintiff was to blame for such reassignments.

42.    On or about August 19, 2016, Plaintiff received a memorandum from Sergeant Rob Pollock informing that Pollock was assigned to investigate the complaint that FORTE filed against him on June 10, 2016, in connection with which internal charges against Plaintiff had been brought, such charges being neglect of duty regarding one or more court appearances, and unbecoming conduct.

43.    On or about September 1, 2016, Plaintiff forwarded a memorandum to Sheriff Morgan rebutting the allegations that Defendant FORTE and another

12

Deputy (Cripe) made against him, indicating therein that FORTE's and Cripe's statements were untrue, and requesting that the matter be forwarded to FDLE for the purpose of conducting a perjury investigation.

44.    On or about September 2, 2016, in connection with Plaintiff's firearms policy proposal, the resulting reassignment of light duty officers, and rumors that such reassignment was his fault, Plaintiff was told by Defendant HAINES that "you are acting crazy, and everyone is mad at you because you caused them to be moved." HAINES continued that he understood that this was not Plaintiff's fault.

45.    Shortly thereafter, the trailer placed on Ms. Nix' property by the Brundidges, which had been stored at Smith Brothers Paint and Body Shop for about a year, was removed from storage by some or all Defendants and returned to the Brundidges, without payment of a single penny owed to Ms. Nix. Such removal was accompanied by threats of arrest directed at Smith, based upon which he did not resist or oppose removal.

46.    Notwithstanding Plaintiff's formal complaints and his informal reports of harassment by supervisors, no action has been taken by Defendant SHERIFF.

47.    On one or more occasions, Defendant HAINES made and published untrue statements about Plaintiff that harmed his reputation. By way of example,

13

the State Fair for this region will begin shortly after the filing of this Amended Complaint, on or about the second week of October 2016. For many years, Plaintiff was assigned part-time duties in connection with the Fair, for which duties he earned substantial income, such duties including both scheduling security in advance of the Fair and then working security during the Fair.

48.    On or about September 14, 2016, Plaintiff learned of Defendant HAINES continued retaliation against him by overhearing a telephone call—on speaker phone—in which Defendant HAINES, in the presence of Lieutenant Joe Webber and Felicia Chivington, told Don Frenkel, general manager of the State Fair, that Defendant SHERIFF's personnel's involvement with the Fair would be handled differently this year, that Plaintiff would not be involved with scheduling, but that instead scheduling would go through one of the secretaries of Defendant SHERIFF. When Frenkel complained to Defendant HAINES about Plaintiff's absence/unavailability, their interaction became heated, Frenkel accused HAINES of having lied to him about Plaintiff, and HAINES responded by announcing that "Philip has had mental issues for a year and needs to see a professional for help," and further that "Nix isn't working this year because he is a baby."

49.    Defendant HAINES proceeded to make certain changes impacting Plaintiff, making clear that he is now setting Plaintiff up to fail in his position.

Further, Plaintiff has been transferred twice since the Complaint in this action was filed on May 17, 2016, at least one of which was punishment.

50.     While both investigations of Plaintiff may be coming to a conclusion, in the investigation of Defendant SAVAGE's complaint pertinent to the Brundidges' trailer, given SAVAGE's claims that she in fact owned the trailer in question and originally bought it by check, even inexperienced investigators would have acted to obtain the check in question to corroborate SAVAGE's claim. On information and belief, the investigators have not sought to obtain such check as evidence.

51.     On information and belief, none of the complaints that Plaintiff has filed have been investigated at all.  Specifically, Plaintiff's complaint against Defendants SAVAGE and FORTE were not investigated . Additionally, and again on information and belief, the investigators of one or both complaints pertinent to the Brundidges' trailer have not addressed the merits of Plaintiff's position that disposition of such vehicle is a civil rather than a criminal matter.

52.     On or about September 16, 2016, Plaintiff was interviewed in connection with the IA complaint SAVAGE has filed against him. At that interview, Plaintiff became aware that SAVAGE told several lies to investigators that should have been followed up, but on information and belief were not. In fact, the investigators were confused as to whether or not there was even a criminal

investigation into Plaintiff's actions and allegations by the State Attorney's office.

53.     Following Plaintiff's IA interview, he was directed to review transcripts of Defendant FORTE's and certain other witnesses' testimony to highlight statements that he believed were untrue. When Plaintiff responded that he believed doing so was inappropriate, he was told that such review had been ordered by Defendant HAINES. When the investigator called Commander Yuhauz and put Plaintiff on the phone, Plaintiff informed Yuhauz that such testimony was pertinent to the within lawsuit, that he was represented by counsel in this lawsuit, and that did not want to review others' testimony without the approval of his own counsel. Commander Yuhauz responded that Defendant HAINES was aware of the fact that Plaintiff was represented by counsel and did not care, and further that if Plaintiff refused to review the transcripts, she should inform him that such refusal was insubordinate and constituted a basis for termination. Plaintiff followed up by asking whether Defendant HAINES' instruction could be given to him in writing, to which question Commander Yahauz simply laughed. Plaintiff did as directed.

54.     For reasons both inexplicable and false, Plaintiff has twice been placed on administrative leave, and fears further retaliation through arrest and/or by other means. He has been advised that he may be arrested in the near future, and that plans are being made in this regard.

16

55.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay her a fee for her services. Defendants should be made to pay said fee along with costs incurred in connection with this action under applicable law.

## COUNT I-PUBLIC EMPLOYEE WHISTLEBLOWER RETALIATION
### (against Defendant SHERIFF)

56.    Paragraphs 1-55 are re-alleged and incorporated.

57.    This count sets forth a claim under §112.3187, *et seq*., Fla.Stats., against Defendant SHERIFF.

58.    Plaintiff is a person protected under Chapter 112, Fla.Stats.

59.    As stated more specifically, in part, above, Plaintiff reported and disclosed violations of laws, rules, and/or regulations to a person or persons who had authority to investigate, police, manage and otherwise remedy the violations. Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Fla.Stats.

60.    After providing information as well as reporting these matters as related more fully above, Plaintiff was the victim of retaliatory actions as set forth more fully above.

61.    Plaintiff's position and responsibilities within Defendant SHERIFF were adversely affected as a result of reporting violations of §112.3187, *et seq*., Fla.Stats., as specified in part above.

17

62.     These actions were taken against Plaintiff after Plaintiff objected to and/or reported matters that Plaintiff reasonably suspected were and/or actually were incidents of gross misconduct, malfeasance, and/or misfeasance within Defendant SHERIFF.

63.     These reports were conveyed in writing and/or were made to supervisors and/or to other persons within Defendant SHERIFF who could remedy the violations. After reporting these matters within Defendant SHERIFF, adverse actions were taken against Plaintiff.

64.     Under §112.3187(4), Fla.Stats., Defendant SHERIFF is prohibited from taking adverse personnel action against persons like Plaintiff who disclose the types of information disclosed by Plaintiff. Specifically, Defendant SHERIFF is prohibited from dismissing, disciplining or otherwise taking any other adverse personnel action against an employee for disclosing information pursuant to the provisions of §112.3187(4), Fla.Stats. Under §112.3187(3)(c), Fla.Stats., "adverse personnel action" is defined as "the discharge, suspension, transfer or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or any other adverse action taken against an employee within the terms and conditions of employment by an agency or independent contractor."

65.     After making the disclosures identified in part above, Plaintiff suffered adverse employment actions, which adverse actions are reported in part above and are continuing.

66.     The actions of all employees within Defendant SHERIFF who affected his employment adversely did so in retaliation against him for "whistleblowing" activities.

67.     As a direct and proximate result of the actions taken against him by Defendant SHERIFF, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, and other tangible and pecuniary damages.  These damages have occurred in the past, are occurring at present and will likely continue into the future. Plaintiff is also entitled to injunctive relief under this count.

## COUNT II-FIRST AMENDMENT RETALIATION
### (against Defendant SHERIFF)

68.     Paragraphs 1-55 are re-alleged and incorporated.

69.     This count sets forth a claim against Defendant SHERIFF for violating Plaintiff's First Amendment rights to speech and expression, brought through 42 U.S.C. §1983, and is pled in the alternative.

70.     Plaintiff has a right to freedom of speech under the First Amendment

19

to the United States Constitution, applicable to the states, municipalities and their agencies through the Fourteenth Amendment. Defendant is a person under the laws applicable to this action.

71.   Plaintiff engaged in constitutionally protected speech by making public statements. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above.

72.   After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. Defendant SHERIFF infringed on Plaintiff's constitutionally protected interests in freedom of expression and speech, in part, by harassing and targeting him, defaming him, suspending him and taking actions to possibly have him arrested.

73.   The actions of Defendant SHERIFF complained of herein were taken by or at the direction of individuals, acting on behalf of Defendant SHERIFF, who were each policymakers for purposes of the actions taken. Further, Defendant SHERIFF, through its employees and agents, had written or unwritten policies, had absences of required policies, and/or engaged in customs and practices of unconstitutionally retaliating against citizens who speak out on matters of public concern.

74.   Defendant SHERIFF's conduct, through its officers, employees,

and/or agents, in harassing and targeting Plaintiff, is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights to speak/express. The actions and inactions of Defendant SHERIFF were taken under color of law with the intent to harm Plaintiff. Defendant SHERIFF is a person under the law and all actions taken that have adversely affected Plaintiff were taken by or at the direction of Sheriff Morgan as Defendant SHERIFF's final policymaker, were taken with his approval, where sanctioned by him, were rubber-stamped by him, and/or were ratified by him.

75.    The actions by and on behalf of Defendant SHERIFF set forth in this count were not unique events of the violations set forth herein. On information and belief, further similar events of wrongful action on the part of Defendant SHERIFF and/or its deputies, employees and agents have taken place, such events combining to determine a pattern of similar wrongful and illegal behavior.

76.    As a direct and proximate result of the actions taken against him by Defendant SHERIFF, Plaintiff has sustained emotional pain and suffering damages and a loss of the capacity for the enjoyment of life, and he suffered other tangible and intangible damages. These damages occurred in the past, are occurring at present, and are likely to continue into the future. Plaintiff is also entitled to injunctive relief under this count.

## COUNT III-FIRST AMENDMENT RETALIATION
### (against the Individual Defendants)

77.    Paragraphs 1-55 are re-alleged and incorporated.

78.    This count sets forth claims against the Individual Defendants under 42 U.S.C. §1983 for violating Plaintiff's First Amendment rights to speech and expression, and is pled in the alternative.

79.    Plaintiff has a right to freedom of speech under the First Amendment to the United States Constitution, applicable to the states, municipalities and their agencies through the Fourteenth Amendment.  Plaintiff engaged in constitutionally protected speech by making public statements. The main thrusts of Plaintiff's statements were public in nature on matters of public concern, as outlined in part above.

80.    After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above. The Individual Defendants infringed on Plaintiff's constitutionally protected interest in freedom of expression and speech, in part, by harassing and targeting him, defaming him, suspending him, and taking actions to possibly have him arrested.

81.    Plaintiff's right to free speech includes the right to express his

opinions freely on public issues and without retaliation from government and government officials.

82.   The Individual Defendants acted to deprive Plaintiff of his rights under the First Amendment to the United States Constitution by harassing and retaliating against Plaintiff.

83.   The Individual Defendants' conduct in harassing and targeting Plaintiff is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights to speak/express. The actions and inactions of the Individual Defendants were taken under color of law with the intent to harm Plaintiff.

84.   The Individual Defendants are persons under the law.

85.   The Individual Defendants misused their power, possessed by virtue of state law and made possible only because they was clothed with the authority of state law. The violations of Plaintiff's rights, as described in part above, occurred under color of state law, and are actionable under 42 U.S.C. §1983. The law was clearly established that the actions by the Individual Defendants violated the First Amendment, as alleged herein.

86.   The Individual Defendants intended, through their actions, to punish

and retaliate against Plaintiff for exercising his First Amendment right and to deter Plaintiff and others from exercising such rights in the future.

87.   As a direct and proximate result of the Individual Defendants' actions, as set forth in part above, Plaintiff has been injured and have suffered emotional distress, mental pain and suffering, pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is entitled to injunctive/equitable relief and to punitive damages under this count.

## COUNT IV-DEFAMATION
### (brought against Defendants SAVAGE and HAINES)

88.   Paragraphs 1-55 are re-alleged and incorporated.

89.   This count sets forth claims against Defendants SAVAGE and HAINES for common law defamation.

90.   These Defendants published, caused to be published or allowed to be published false statements about Plaintiff to third parties as set forth in part above.

91.   The statements made by these Defendants were malicious and intended to harm Plaintiff.

92.   The statements referred to above were intended to harm Plaintiff's

24

reputation in the community and to deter others from associating with him, and are actionable on their face.

93.     As a result of the falsity of the statements made by these Defendants set forth above and the publication thereof, Plaintiff has suffered damages which include, without limitation, special and general damages.

94.     These Defendants engaged in slander *per se* which is actionable on its face, and general damages are presumed. Alternatively, these Defendants engaged in slander *per quod* and Plaintiff is entitled to damages as a consequence thereof. The communications made by these Defendants imputed to Plaintiff conduct, one or more characteristics or conditions incompatible with the exercise of his lawful business, trade, profession, and office.

95.     These statements regarding Plaintiff made and/or published by these Defendants attribute conduct or characteristics characteristics to Plaintiff which in effect brand him as immoral and/or dishonest, and which are incompatible with his functioning as a member of his community and occupation. Few good, decent or honorable people want to have business relationships with persons bearing the qualities attributed to him by these Defendants, whether serving in a personal or professional capacity.

96.     As a result of the defamatory statements, Plaintiff has suffered

extreme humiliation, embarrassment, and mental anguish, pain and suffering, inconvenience, loss of consortium, lost capacity for enjoyment of life, loss of business and profits, loss of reputation, loss of good standing in the community and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is also entitled to injunctive relief and to punitive damages under this count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this court take jurisdiction over this cause;

(b) that this court enter judgment against Defendants and for Plaintiff, granting equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein, and providing other equitable relief to Plaintiff;

(c) that this court enter judgment against Defendants and for Plaintiff, awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d) that this court enter judgment against Defendants and for

26

Plaintiff, permanently enjoining Defendants from future violations of law enumerated herein;

(e)     that this court enter judgment against Defendants and for Plaintiff, awarding Plaintiff costs and attorney's fees as allowed by law;

(f)     that this court enter judgment against Defendants and for Plaintiff, awarding Plaintiff interest and equitable relief as allowed by law; and

(g)     that this court grant such other and further relief as is just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record by CM/ECF this 7th day of October, 2016.

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox
